IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| E. JEAN BROWN, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)     **Case No. 11-2580-CM**<br>MICHAEL J. ASTRUE, COMMISSIONER )<br>OF SOCIAL SECURITY, )<br>)<br>)<br>Defendant. )<br>_____ ) | |

## MEMORANDUM AND ORDER

Plaintiff E. Jean Brown claims that the combined effect of carpal tunnel syndrome and pain in her back, neck, and knees is disabling. A former check sorter, plaintiff filed this action pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq., and Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Under Title II, plaintiff requests disability insurance benefits. Under Title XVI, plaintiff requests supplemental security income benefits. An Administrative Law Judge ("ALJ") found that plaintiff was not disabled in a decision dated June 24, 2011, which stands as the final decision of the Commissioner of Social Security. Plaintiff contends that the ALJ erred in a number of ways, and she groups those alleged errors into two categories: (1) the ALJ failed to give appropriate weight to the medical expert opinions; and (2) the ALJ erroneously determined plaintiff's residual functional capacity ("RFC") and wrongly decided that she could return to her position as a check sorter. After reviewing the record, the court makes the following rulings.

**I.     Legal Standard**

This court applies a two-pronged review to the ALJ's decision: (1) Are the factual findings supported by substantial evidence in the record?  (2) Did the ALJ apply the correct legal standards?  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).  "Substantial evidence" is a term of art.  It means "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).  When evaluating whether the standard has been met, the court is limited; it may neither reweigh the evidence nor replace the ALJ's judgment with its own.  *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)).  On the other hand, the court must examine the entire record—including any evidence that may detract from the decision of the ALJ.  *Jarmillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

Plaintiff bears the burden of proving disability.  *Hunter*, 321 F. App'x at 792.  A disability requires an impairment—physical or mental—that causes one to be unable to engage in any substantial gainful activity.  *Id*. (quoting *Barnhart v. Walton*, 535 U.S. 212, 217 (2002)).  Impairment, as defined under 42 U.S.C. § 423(d)(1)(A), is a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The ALJ uses a five-step sequential process to evaluate disability claims.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citation omitted).  But the ALJ may stop once she makes a disability determination; she does not need to continue through subsequent steps if she is able to find a claimant disabled or not disabled at an intermediate step.  *Id*.

The components of the five-step process are:

- **Step One**: The plaintiff must demonstrate that she is not engaged in substantial gainful employment activity. *Id*. If the plaintiff meets this burden, then the ALJ moves to Step Two.

- **Step Two**: The plaintiff must demonstrate that she has a "medically severe impairment or combination of impairments" that severely limits her ability to do work. *Id*. (internal quotation omitted).

    o  If the plaintiff's impairments have no more than a minimal effect on her ability to do work, then the ALJ can make a nondisability determination.

    o  If plaintiff makes a sufficient showing that her impairments are more than minimal, then the ALJ moves to Step Three.

- **Step Three**: The ALJ compares the impairment to the "listed impairments"—impairments that the Secretary of Health and Human Services recognizes as severe enough to preclude substantial gainful activity. *Id*. at 751.

    o  If the impairment(s) match one on the list, then the ALJ makes a disability finding. *Id*.

    o  If an impairment is not listed, the ALJ moves to Step Four of the evaluation. *Id*.

- **Prior to Step Four**: The ALJ must assess the plaintiff's RFC. *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).

- **Step Four**: The plaintiff must show that she cannot perform her past work. *Williams*, 844 F.2d at 751. If plaintiff shows that she cannot, the ALJ moves to the last step.

- **Step Five**: Here, the burden shifts to the ALJ. The ALJ must show that the plaintiff can perform some work that exists in large numbers in the national economy. *Id*.

II.  **Analysis**

A.  **The Administrative Decision**

This case has some history.  Plaintiff originally filed her applications for disability and supplemental security income benefits in 2006.  She alleged disability due to degenerative spine disease, high blood pressure, hernia, and carpal tunnel syndrome.  An ALJ found that plaintiff was not disabled on March 16, 2009.  Plaintiff appealed that finding. and this court remanded the case to the agency for additional proceedings.  The ALJ conducted a second hearing before issuing the decision now before the court.  At the second proceeding, the ALJ heard testimony from Dr. Allan Levine, an orthopedic surgeon serving as a medical expert who had reviewed some—but not all—of the record; Amy Spinelli, a vocational expert ("VE"); and plaintiff.  The ALJ then issued her decision, which included the following determinations:

- **Step One**:  Plaintiff did engage in substantial gainful activity in 2007, which does not preclude a finding of disability, but is relevant to plaintiff's abilities and credibility.  Notwithstanding the period in 2007, plaintiff has not engaged in substantial gainful activity for a continuous twelve-month period.

- **Step Two**:  Plaintiff has severe impairments of arthralgias and arthritis.

- **Step Three**:  Plaintiff's impairments (or a combination thereof) do not meet or medically equal a "listed impairment."

- **Prior to Step Four**:  Plaintiff has the RFC to perform light work with the following allowances and limitations:
    - Lifting and carrying:  ten pounds frequently and up to twenty pounds occasionally
    - Sitting: six of eight hours with normal breaks
    - Standing: four of eight hours in forty-five-minute increments, then sit two-three minutes
    - Walking: two of eight hours in thirty-minute increments, then sit three minutes
    - Occasionally:  using stairs, crouching, and stooping

- o Avoid:
    - Ladders
    - Crawling
    - Kneeling
    - Hazards such as heavy machinery or unprotected heights
    - Extreme cold
- o Cannot:
    - Work where she must look up or use her upper extremities overhead
    - Perform tasks requiring a strong grip
- o No Limitations: performing fine or gross manipulation with her hands

- **Step Four**: Plaintiff can perform her past relevant work as a check sorter.

- **Conclusion**: Plaintiff has not been disabled from September 6, 2000 through June 24, 2011.

**B. Plaintiff's Claims**

As mentioned above, plaintiff alleges two overriding errors with the ALJ's decision: Plaintiff argues that the ALJ erred in: (1) failing to give appropriate weight to the medical expert opinions; and (2) determining plaintiff's RFC and deciding that she could return to her position as a check sorter.

*1.   Medical Expert Opinions*

In this case, no treating physician was involved.  This means that the only medical opinion evidence before the ALJ was from consultative physicians and a non-examining medical expert (Dr. Levine).  Dr. Levine generally opined that plaintiff could perform a range of light work activity with some limitations.  On the other hand, Dr. Wayne Spencer—a consultative physician who examined plaintiff once—believed plaintiff to be more limited in her activities (so limited, in fact, that if his opinion were accepted, plaintiff would qualify as disabled).  And Dr. Emily Abell found that plaintiff

had some moderate and mild limitations in her ability to engage in work-related mental activities.  Dr. Abell also examined plaintiff once.

The ALJ gave Dr. Levine's opinion the greatest weight.  She rejected the opinion of Dr. Spencer, explaining that it was inconsistent with the record.  In addition, she found Dr. Abell's opinion mostly supported by the record, affording it some weight.  Plaintiff complains that the ALJ erred in these evaluations for a number of reasons.

        a.   <u>Conflicts with HALLEX</u>

First, plaintiff contends that the ALJ erred because she did not follow the directions of the Hearing, Appeals and Litigation Law Manual ("HALLEX").  Specifically, she complains that (1) Dr. Levine did not hear plaintiff's testimony before opining; (2) the ALJ did not make sure that Dr. Levine had all materials before opining, including the transcript of the prior hearing and Exhibit 20F; and (3) the ALJ did not explain the need for a medical expert at the beginning of the hearing.  HALLEX provides that all of these steps should be taken.  *See* HALLEX I-2-5-39A (requiring the ALJ to give a summary of testimony if the medical expert was not present for it; to ensure on the record that the expert has examined all evidence; and to explain why medical expert testimony is necessary); I-2-5-38 (requiring transcripts or summaries of prior medical testimony).

Plaintiff is correct: the ALJ did not follow the provisions of HALLEX that prescribe these specific steps.  But HALLEX is not binding on the Commissioner.  *McCoy v. Barnhart*, 309 F. Supp. 2d 1281, 1284–85 (D. Kan. 2004).  Despite HALLEX's non-binding effect, however, the court does believe that it would have been better practice to ensure that Dr. Levine both (1) heard plaintiff's testimony and (2) had all materials before testifying to ensure that he was making a fully-informed analysis.  In this case, the materials available before the hearing that were not provided to Dr. Levine totaled nearly one hundred pages of medical records from the Kansas City Free Health Clinic.

Partly because the court is remanding this case on other grounds, the court determines that the case should also be remanded on this issue. Per law, the ALJ was not <u>required</u> to ensure that Dr. Levine reviewed the entire record before rendering his opinion. But it would undermine the claims review process if this routinely occurred, at least when the unreviewed records are as lengthy and potentially substantive as those presented in this case and the ALJ relies heavily on the testimony of the non-examining medical expert whose record review was incomplete. On remand, the ALJ should ensure that Dr. Levine has the portions of the record that he did not review before the 2011 hearing. The ALJ should then inquire as to whether the additional documents and/or testimony change Dr. Levine's opinion in any way.

      b.  <u>ALJ's Review of Exhibits 21F and 22F</u>

Second, plaintiff discusses two exhibits that were not a part of the record at the time of the hearing: 21F and 22F. The ALJ does not discuss this evidence in her opinion and plaintiff is concerned that the ALJ may not have reviewed it.

The ALJ bears the obligation of reviewing all evidence in the record. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). This does not mean, on the other hand, that the ALJ must discuss every individual piece of evidence. *Id.* Here, the ALJ specified that she considered all the evidence. (Doc. 8-13 at 5.) The court is willing to take her at her word. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

      c.  <u>Examining Doctors Get More Weight</u>

Third, plaintiff takes issue with the ALJ's decision to give Dr. Levine's opinion more weight than Dr. Spencer's. Dr. Levine did not examine plaintiff. Dr. Spencer did. Social Security regulations provide that the ALJ is to give more weight to the opinion of one who has examined the claimant than to one who has not. 20 C.F.R. §§ 404.1527(d)(1); 416.927(d).

-7-

Plaintiff has correctly cited the applicable regulations. But these regulations do not provide that, under all circumstances, the ALJ must give the opinion of an examining physician more weight than that of a non-examining physician. Here, the ALJ thoroughly explained her reasons for giving Dr. Levine's opinion more weight than Dr. Spencer's. She pointed out the inconsistencies between Dr. Spencer's findings and his notes about the evaluation. And she gave specific, rational reasons for her decision. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (providing that the ALJ must give "specific, legitimate reasons" for rejecting an opinion) (citation omitted). The court finds no error in the ALJ's decision to give Dr. Levine's opinion more weight than Dr. Spencer's.

d. Reliance on Dr. Levine's Testimony to Discredit Dr. Spencer

Fourth, plaintiff argues that the ALJ improperly used Dr. Levine's testimony—and no independent analysis or review of the record—to discredit the opinion of Dr. Spencer. The court disagrees. A review of the ALJ's decision shows substantial analysis of the record and the testimony in the ALJ's discussion of the medical expert findings. At length, the ALJ discusses and cites the evidence that supports Dr. Levine's opinion and discredits Dr. Spencer's opinion. She references Dr. Levine's testimony a number of times, but she does not solely rely on it to give Dr. Spencer's opinion less weight. Rather, she relies on the comparative support in the record for each doctor's conclusions. The court finds no error here.

e. Failure to Address Every Factor in the Regulations

Fifth, plaintiff attacks the ALJ's decision for failing to address every regulatory factor in deciding to give Dr. Levine's opinion more weight than Dr. Spencer's. Express discussion of every factor is unnecessary. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5 (S.S.A. Aug. 9, 2006)), with regard to identical factors under 20 C.F.R. § 404.1527(d)). The ALJ is only required to give "good reasons," engaging in a discussion

that "'allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.'"  *Nichols v. Astrue*, 341 F. App'x 450, 453 (10th Cir. 2009) (quoting Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6).  Here, the ALJ gave good reasons and fully addressed the inconsistencies in the record.  The court finds no error in the weight given to the medical opinions.

> f. What About Dr. Abell?

Sixth, plaintiff notes that the ALJ did not discuss the opinion of Dr. Abell in her opinion. Plaintiff's observation is largely correct.  The extent of the ALJ's discussion is this:  "The evidence of record mostly supports the RFC opined by the consultative examiner at exhibit 15F and the findings have been given consideration; however, overall, the claimant does not have limitations that would preclude all unskilled work as she has performed in the past."  (Doc. 8-13 at 12.)  This slight discussion does not give the court sufficient information to review why the ALJ gave Dr. Abell's opinion the weight she did.  In fact, the court is uncertain exactly what weight the ALJ gave the opinion or what parts she accepted.  On remand, the ALJ should further explain the weight being given to Dr. Abell's opinion and the reason for doing so.

> 2. ***RFC/Past Relevant Work Decisions***

As outlined above, the ALJ assesses plaintiff's RFC prior to Step Four.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200(a).  At Step Four, the ALJ must make three phases of findings: (1) plaintiff's RFC; (2) the physical and mental demands of plaintiff's prior employment; and (3) considering the RFC and the physical and mental demands, plaintiff's ability to return to her prior employment. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted); *Hill v. Astrue*, No. 07-1028-MLB, 2007 WL 4741371, at *5 (D. Kan. Sept. 7, 2007) (citing *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)).  Here, plaintiff takes issue with the determination of

plaintiff's RFC; the ALJ's failure to consider the physical and mental demands of plaintiff's prior employment; and the use of an inadequate hypothetical question to elicit testimony from the vocational expert about whether she could return to that employment.

      a. <u>Determination of RFC</u>

          *i. Failure to Consider All of the Evidence*

Plaintiff first claims that the ALJ determined her RFC without properly evaluating all of the medical evidence of record. The court has found that the ALJ needs to more fully explain the weight given to Dr. Abell's opinion. On remand, this may alter the analysis of the medical evidence. The court therefore finds it unnecessary to rule on this argument.

          *ii. Failure to Consider All of Plaintiff's Medically Determinable Impairments*

Next, plaintiff alleges that the ALJ did not consider all of her medical conditions. According to plaintiff, although the ALJ identified arthritis and arthralgias, she did not address plaintiff's carpal tunnel syndrome, migraine headaches, difficult-to-control hypertension, depression, memory deficits, and obesity.

Contrary to plaintiff's assertion, the ALJ did consider plaintiff's carpal tunnel syndrome, migraine headaches, and depression. The ALJ explained why claims of the disabling impact of these ailments were not consistent with the record. The court finds no error in the ALJ's failure to include restrictions in the RFC regarding these ailments.

The ALJ also addressed plaintiff's hypertension. She noted that it is "controlled medicinally when the claimant is compliant with treatment." (Doc. 8-13 at 8.) She also determined that plaintiff's hypertension does not impact the limitations in plaintiff's RFC. The ALJ did not discuss plaintiff's hypertension at length, but it is clear that she considered it as one of plaintiff's medical conditions.

Memory deficits and obesity present a different scenario. Neither is mentioned in the decision. Memory deficits relate to the opinion of Dr. Abell. They may or may not merit more discussion, depending on how the ALJ explains her treatment of Dr. Abell's opinion on remand.

As for obesity, the court finds little mention of it in the record. There is no evidence that plaintiff's weight limits plaintiff any more than the limitations the ALJ found. Accordingly, it was not erroneous for the ALJ to omit discussion of obesity.

As mentioned, it is possible on remand that the ALJ's assessment of plaintiff's memory deficit will change. Other than that, however, the court finds no error with the ALJ's consideration of plaintiff's medically determinable impairments.

### iii. Plaintiff's Credibility

Third, plaintiff claims that the ALJ did not properly evaluate her credibility. She makes several points within this argument:

- The ALJ was bound to evaluate all of the factors in 20 C.F.R S 404.1529(c) but did not.
- The ALJ should not have questioned plaintiff's credibility based on her statements that she could cook, shop for groceries, and clean.
- The ALJ should not have used her work in 2007 to question the severity of her condition.
- The ALJ only considered plaintiff's use of medications—not other treatment.
- The ALJ did not make findings about the "location, duration, frequency and intensity of pain or other symptoms and factors that precipitate and aggravate the symptoms." (Doc. 15 at 55.)

When an ALJ's credibility determinations are supported by substantial evidence, the court will not upset them; they are "peculiarly the province of the finder of fact." *Wilson v. Astrue*, 602 F.3d

1136, 1144 (10th Cir. 2010) (citation omitted).  Credibility findings, however, should be more than a bare conclusion.  The ALJ should show a close and affirmative link to substantial evidence, setting forth the specific evidence upon which she relies.  *Sanders v. Astrue*, 266 F. App'x 767, 770 (10th Cir. 2008) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).  The ALJ may consider the following when making her credibility determination:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment for relief of the symptoms; (6) measures other than treatment used to relieve the symptoms (e.g. rest); and (7) any other factors.

Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *1 (July 2, 1996).  But the ALJ is not required to formally address every factor.  *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (holding that a credibility finding "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility") (quotation marks and citation omitted).

The ALJ's credibility findings are well-explained and well-documented.  She may not have discussed every factor, but stringent adhesion to the factors is not required.  The ALJ discussed the objective medical evidence in the record and contrasted plaintiff's subjective complaints with her activities and treatment.  Based on this analysis, the ALJ found her partially credible.  Her analysis is both compliant with law and supported by substantial evidence.  Given this situation, the court will not substitute its opinion for that of the fact-finder.

### b. Physical and Mental Demands of Prior Work

Plaintiff next challenges the portion of the ALJ's opinion that discusses whether she can return to her former job.

The ALJ's failure to make specific findings about the physical and mental demands of plaintiff's prior employment requires remand. *Hill*, 2007 WL 4741371, at *5 (citing *Clardy v. Barnhart*, No. 03–2347–JWL, 2004 WL 737486, at *6 (D. Kan. Apr. 5, 2004)); *Hayden v. Barnhart*, 374 F.3d 986, 991 (10th Cir. 2004) ("We have long recognized the Commissioner's 'basic obligation' to fully investigate the physical and mental demands of a claimant's past work and compare them to her current capabilities. . . . [I]f the ALJ fails to make the requisite inquiry regarding the exertional demands of a claimant's prior work and the record is devoid of evidence on that issue, a case must be remanded to develop an adequate record.") (internal citation omitted).

In making her Step Four findings, the ALJ may rely on the vocational expert's ("VE") testimony for phase one and two. *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). She may not, however, delegate the overall Step Four analysis to the VE. Relying on the VE's information about the demands of plaintiff's past relevant work is acceptable. *Id.* So is relying on the VE's opinion that a person with plaintiff's RFC is able to meet those demands. *Id.* The ALJ may accept the VE's opinions. *Id.* But there is a critical difference between reliance and delegation. *Id.* Reliance is appropriate; delegation is not. Where the ALJ is the person making the phase two and three findings—and she quotes the VE in support of those findings—the ALJ has properly relied upon the VE's testimony. *Id.*

Here, the ALJ stated:

The claimant worked previously as a check sorter. This work was performed at the sedentary exertional level. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed. This conclusion is supported by the testimony of the impartial vocational expert. The vocational expert testified an individual with the claimant's residual functional capacity could perform the claimant's past relevant work. The undersigned finds the vocational expert's testimony consistent with the Dictionary of Occupational Titles and the vocational evidence of record. Accordingly, the undersigned finds the claimant is able to perform past relevant work.

(Doc. 8-13 at 12–13.)  This analysis is insufficient.  The court cannot discern what the physical and mental requirements for a check sorter are.  The ALJ does not discuss them and did not ask the vocational expert to testify about them at the hearing.  To the contrary, when the vocational expert started to mention the Dictionary of Occupational Titles ("DOT") and the occupation's DOT number, the ALJ told her that she did not want to know the number.  (Doc. 8-13 at 77.)  She only wanted to know the skill and exertional levels.  (*Id.*)  Without knowing what the demands of the job are, the court cannot meaningfully review whether the ALJ's decision is supported by substantial evidence.  The case must be remanded for further inquiry into and analysis of the physical and mental demands of plaintiff's prior job.

### c. Bad Hypothetical

And, finally, plaintiff contends that the ALJ's hypothetical to the vocational expert was faulty because it did not account for all of her impairments and limitations.  Vocational testimony prompted by inadequate hypothetical questions cannot constitute substantial evidence.  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

Again, because the court is remanding the case for further development regarding the weight that the ALJ gives Dr. Abell's opinion, it is possible that the ALJ's hypothetical will change as a result.  The court therefore finds it unnecessary to rule on this issue.

## III. Conclusion

Based on the above analysis, the court affirms in part and remands in part the Commissioner's decision.  The case is remanded for further analysis in accordance with this Memorandum and Order.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed in part and remanded in part.  The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

-15-

Dated this 10th day of January, 2013, at Kansas City, Kansas.

                                                      s/ Carlos Murguia
                                                     **CARLOS MURGUIA**
                                                     **United States District Judge**